***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing parties have shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and the W.A. Brown Sons at all times relevant to this case.
3. The PMA Group Insurance Company is the carrier on this claim.
4. Plaintiff alleged on her Form 18, and defendants denied on their Form 61, that plaintiff suffered an injury to her back by specific traumatic incident on or about October 11, 2001, which arose out of and in the course of her employment.
5. Plaintiff contends that her average weekly wage was $552.37 pursuant to the Form 22 provided by defendants on March 17, 2003.
6. The parties stipulate that the correct compensation rate is $363.00.
7. In addition, the parties stipulated into evidence the following:
i. Packet of medical records and reports.
ii. Packet of Industrial Commission forms, discovery responses and personnel documents.
iii. Plaintiff's pay stub for the period ending August 18, 2001.
iv. Additional medical reports from Dr. Bost submitted November 14, 2003.
8. The Pre-Trial Agreement dated September 16, 2003, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-three years old, and was a high school graduate with some business college training. She began working for W.A. Brown Sons in June 1999. The company manufactured walk-in coolers and freezers that could be used in grocery stores. Plaintiff initially worked in the metal shop, but was subsequently promoted to the position of process technician. That job involved working on the production floor and building panels that would be used to make the coolers. Plaintiff would get a metal frame, place it on her worktable, wax it, insert "pods" (metal connector pieces), and then get the sheets of metal to attach to the frame. Once the cooler was completed, she would set it aside.
2. The cooler components were usually brought to the process technicians by expeditors. However, there were occasions when the technicians would run out of an item and would have to obtain their own supplies. The pods were kept in plastic totes that weighed between thirty and fifty pounds.
3. As of October 2001, plaintiff had been having low back pain for approximately six months, but had not sought medical treatment. According to her testimony, she had not missed work as a result of the back symptoms. Plaintiff took over-the-counter medication for the pain.
4. Plaintiff alleges that she was injured on October 11, 2001, after her morning break; however, her time records show she did not work that particular morning. Nonetheless, the Full Commission finds that plaintiff did suffer an injury on an unknown date that same week. On that week, plaintiff ran out of pods while performing her work-related duties, and had to obtain another container of them. When she lifted the container of pods, she experienced a sharp pain in her low back, and immediately dropped the tote. This constituted a specific traumatic incident of the work assigned.
5. Plaintiff's work partner, Tony Harding, observed the event and said he could tell from plaintiff's expression that she was in pain. Plaintiff told him that her back was hurting. Plaintiff immediately left her workstation to inform Rick Dunaway, the team leader, about her injury. Plaintiff's statement that she reported the injury to Dunaway, as corroborated by Harding, is credible.
6. Dunaway reported the incident to plaintiff's supervisor, Barry Christy, who subsequently gave plaintiff a back support belt. At deposition, Dunaway could not recall whether he gave plaintiff a back support belt, but did testify that plaintiff's back support belt was of the type that W.A. Brown Sons would give to employees.
7. Plaintiff worked the remainder of the week. On Sunday October 14, 2001, plaintiff went to ProMed and reported to the doctor there that she had experienced back pain for approximately six months. Plaintiff also described the incident at work but, since her employer had not authorized the medical visit, ProMed would not treat her as a possible workers' compensation patient and made no record of her report of injury.
8. Due to pain from her back problem stemming from the compensable specific traumatic incident, plaintiff was unable to work on Monday. She reported for work on Tuesday but was so visibly impaired by pain that Christy referred her to Pam Cordts in human resources, which is corroborated by Christy's testimony. Ms. Cordts testified that she spoke with plaintiff, but that plaintiff did not say whether her injury was work related. The Full Commission finds that although Ms. Cordts discussed with plaintiff her pain and inability to work, Ms. Cordts failed to ask specific questions regarding the cause of plaintiff's injury. Ms. Cordts testified that she gave plaintiff paperwork on Family Medical Leave and short-term disability, but did not discuss the possibility of workers' compensation. When asked during deposition why she did not discuss workers' compensation with plaintiff, Ms. Cordts replied:
 Because at that time, I I believed that it was something that had occurred outside of work. Normally, if someone comes to me and tells me they have a work-related injury, we'll file a workers' comp claim.
When asked why she did not call W.A. Brown Sons' insurance carrier to report a worker's compensation claim for plaintiff, Ms. Cordts responded:
 Because she did not report it as a workers' compensation claim, didn't allude to it being a workers' comp claim.
Because plaintiff, who is uneducated in matters of workers' compensation procedure, did not know the proper procedure for reporting a work-related injury, Ms. Cordts assumed the injury occurred elsewhere and did not take proper action to assess whether or not plaintiff's injury was, in fact, work related. Moreover, there is no evidence that Ms. Cordts spoke, as she should have, with either Dunaway or Christy to determine if plaintiff's supervisors had actual knowledge of a work-related injury or incident involving plaintiff.
9. Thus, the Full Commission finds that W. A. Brown Sons had actual notice of plaintiff's work-related injury, and resulting workers' compensation claim (1) when plaintiff immediately reported her injury to her team leader, (2) when plaintiff's supervisor gave her a back support belt so that she could continue working; and (3) when her supervisor sent her to human resources to discuss her injury.
10. Even if defendants had not had actual notice, given the nature of plaintiff's injury and her pre-existing back condition, plaintiff's failure to give written notice within 30 days is reasonably excused because plaintiff did not reasonably know of the nature, seriousness, or probable compensable character of her injury until after extensive treatment with Dr. Roy, her treating physician.
11. Upon giving plaintiff the FMLA and short-term disability paperwork, Ms. Cordts advised plaintiff to see a doctor, and told her that for her own safety she would not be allowed to return to work without a note from the doctor.
12. The x-rays taken at ProMed had shown some potential problems, so a radiologist was subsequently asked to review them. After examining the films, the radiologist thought there might be some spondylolysis at L5-S1. Plaintiff was phoned on October 18, 2001, and an appointment was scheduled for her with Dr. Mason, an orthopedic surgeon, for that morning. When plaintiff reported to the doctor's office, she stated that the onset of her symptoms had occurred six months previously, but that she had also been injured on the job. She was demonstrating so much pain behavior on that occasion that Dr. Mason's examination of her was limited. He ordered physical therapy, prescribed medication, and kept plaintiff out of work. After a period of physical therapy, her symptoms appeared to become more localized to the low back and left leg.
13. Dr. Mason subsequently ordered an MRI, which revealed a bulging disc at L5-S1. There was no evidence of nerve root compression, so the findings did not correlate well with her symptoms and did not then warrant surgery. Plaintiff then began to complain of pain more localized in the hip area. Dr. Mason injected the hip on November 29, 2001, but the injection did not give relief. As of December 5, 2001, plaintiff still complained of left leg pain, so Dr. Mason referred her to Dr. Roy for a neurosurgical evaluation.
14. Dr. Roy examined plaintiff on December 12, 2001. At the time of his evaluation, she was using a cane to ambulate, reportedly because her left leg was not working right and she was walking funny. His examination was hampered somewhat by limitations on testing, which plaintiff attributed to her level of pain. Since the findings on her MRI did not appear to explain her symptoms, Dr. Roy recommended additional diagnostic tests and kept her out of work. Plaintiff did not return to him until February 5, 2002, but was significantly improved at that time. She requested that he refer her to a chiropractor, so he sent her to Dr. Bost, who treated her for several weeks and then referred her back to Dr. Roy.
15. By the next office visit on April 3, 2002, plaintiff's condition had worsened. Dr. Roy continued to treat her with conservative measures since there was not an objective explanation for her symptoms. He ordered nerve tests, which she was only partially able to complete due to complaints of severe pain; however, the testing did show no abnormalities in the nerves on which the doctor was focusing. Dr. Roy also suggested a discogram. The test was attempted on September 9, 2002, but was terminated at plaintiff's request due to high levels of reported pain. However, it was eventually performed on September 10, 2002. Although plaintiff reported pain at every level injected, Dr. Roy interpreted the test as showing concordant pain at L5-S1 and possibly L4-5. The post-discogram CT scan showed an annular tear in the disc at L5-S1.
16. Dr. Roy then recommended weight loss and had plaintiff try a TLSO brace to see if restricting the movement of her spine would give her relief. She did subsequently report relief, so in December 2002 the doctor offered her the option of having fusion surgery. On January 16, 2003, Dr. Roy operated on her low back to decompress and fuse the L4-5 and L5-S1 interspaces. Despite the operation, plaintiff continued to complain of back stiffness and problems with her left leg.
17. Dr. Roy rendered an opinion that Ms. Gregory likely had a pre-existing back condition at the time of her work-related injury, and that more likely than not, plaintiff's work-related incident during the week of October 11, 2001, was a trigger exacerbating any back condition that she had prior to that incident. Dr. Roy continued to treat plaintiff as of the date of his deposition on January 23, 2004. At that time, he wanted plaintiff to see an orthopedic surgeon who specialized in treating hip problems regarding her unusual symptoms. He had not released her to return to work, although he opined she could probably do sedentary work.
18. The Full Commission finds that on an unknown date during the week of October 11, 2001, plaintiff sustained a specific traumatic incident of the work assigned when she lifted a heavy container of pods. As a result of this specific traumatic incident, she sustained an injury to her back that aggravated her preexisting degenerative condition. However, it was initially difficult for the treating physicians to sort out diagnoses for her physical problems and to determine the relationship between her symptoms and the injury at work.
19. Defendants denied this claim because plaintiff did not give written notice of her injury to her employer within thirty days of its occurrence; however the Full Commission finds defendants did have actual notice of plaintiff's work-related injury shortly after it occurred. As soon as the injury occurred, plaintiff left her work position to report the incident to her team leader, Dunaway, which is corroborated by her work partner, Harding. Dunaway reported the injury to plaintiff's supervisor, who gave plaintiff a back support belt so that she could continue her work. Thus, defendant's had actual notice of plaintiff's work-related injury. Further, even if defendants did not have actual notice, given the nature of plaintiff's injury and her pre-existing back condition, plaintiff's failure to give written notice within 30 days is reasonably excused because plaintiff did not reasonably know of the nature, seriousness, or probable compensable character of her injury until after extensive treatment with Dr. Roy, her treating physician.
20. In finding that plaintiff's claim should not be denied for her failure to give notice to defendants within 30 days, the Full Commission deems it appropriate to remand this matter to a deputy commissioner for the taking of additional evidence or further hearing, if necessary, and the entry of an Opinion and Award with findings on the issues of (1) the extent of plaintiff's disability; (2) the amount of indemnity benefits due plaintiff; and (3) the extent of medical compensation due plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On an unknown date during the week of October 11, 2001, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant in that she sustained a back injury as the result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. The aggravation or exacerbation of plaintiff's pre-existing back condition as a result of a specific traumatic incident, which has resulted in loss of wage earning capacity, is compensable under the Workers' Compensation Act. See Ruffin v. Compass Group USA,150 N.C. App. 480, 563 S.E.2d 633 (2002); and Smith v. Champion, Int'l.,134 N.C. App. 180, 517 S.E.2d 164 (1999).
3. Defendants had actual notice of plaintiff's work-related injury, and resulting workers' compensation claim, (1) when plaintiff immediately reported her injury to her team leader, (2) when plaintiff's supervisor gave her a back support brace so that she could continue working; and (3) when her supervisor sent her to human resources to discuss her injury. N.C. Gen. Stat. § 97-22. Because defendants had actual knowledge of plaintiff's work-related injury, plaintiff's failure to give written notice of her claim did not bar her claim for compensation. See Chiltonv. Bowman Gray School of Medicine, 45 N.C. App. 13, 262 S.E.2d 347
(1980) (holding that faculty member's failure to file a written claim did not bar his claim for compensation when several members of the faculty and the dean of the school knew of plaintiff's injury).
4. Even if defendants had not had actual notice, given the nature of plaintiff's injury and her pre-existing back condition, plaintiff's failure to give written notice within 30 days is reasonably excused because plaintiff did not reasonably know of the nature, seriousness, or probable compensable character of her injury until after extensive treatment with Dr. Roy, her treating physician. See Lawton v. County ofDurham, 85 N.C. App. 589, 355 S.E.2d 158 (1987).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. This matter is hereby remanded to Chief Deputy Commissioner Stephen T. Gheen for assignment to a Deputy Commissioner for the taking of additional evidence or further hearing, if necessary, and the entry of an Opinion and Award with findings on the issues of (1) the extent of plaintiff's disability; (2) the amount of indemnity benefits due plaintiff; and (3) the extent of medical compensation due plaintiff.
2. Defendants shall pay costs.
This 10th day of December 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER